COOLEY LLP
Mark F. Lambert (197410) (mlambert@cooley.com)
Lam K. Nguyen (265285) (lnguyen@cooley.com)
Jeffrey M. Walker (280505) (jwalker@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:      (650) 843-5000
Facsimile:      (650) 849-7400

Attorneys for Plaintiff Quanergy Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Quanergy Systems, Inc., | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **A. DECLARATORY JUDGMENT**<br>**B. BREACH OF CONTRACT** |
| Velodyne LiDAR, Inc. and Caterpillar Inc., | **C. MISAPPROPRIATION OF TRADE**<br>**SECRET UNDER CALIFORNIA**<br>**CIVIL CODE § 3426 ET SEQ.** |
| Defendants. | **D. MISAPPROPRIATION OF TRADE**<br>**SECRET UNDER 18 U.S.C. § 1836**<br>**E. CONSTRUCTIVE FRAUD.** |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff, Quanergy Systems, Inc. ("Quanergy"), by counsel, files the following Complaint for declaratory relief, breach of contract, misappropriation of trade secrets under California Civil Code § 3426 et seq., misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and constructive fraud and, in support thereof, alleges as follows:

## THE PARTIES

1.       Plaintiff Quanergy is a corporation organized under the laws of the State of Delaware, and having a principal place of business at 482 Mercury Drive, Sunnyvale, California 94085.

2.       On information and belief, Defendant Velodyne LiDAR, Inc. ("Velodyne") is a corporation organized under the laws of the State of Delaware and maintaining its principal place of business at 345 Digital Drive, Morgan Hill, California 95037.

3.       On information and belief, Caterpillar Inc. ("Caterpillar") is a corporation organized under the laws of the State of Delaware and maintaining its principal place of business at 501 Southwest Jefferson Avenue, Peoria, IL, 61630.

## JURISDICTION AND VENUE

4.       This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and, in addition, an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.  Accordingly, subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338 because these claims arise under federal law.

5.       Quanergy's additional claims against Defendants for breach of contract, misappropriation of trade secrets under California Civil Code § 3426, and constructive fraud are sufficiently related to Quanergy's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.  Thus, this Court has supplemental jurisdiction over these state law claims by reason of 28 U.S.C. § 1367.

6.       Upon information and belief, Defendant Velodyne is subject to this Court's personal jurisdiction because it does and has done substantial business in this judicial district,

including maintaining its headquarters in this judicial district.  This Court has personal jurisdiction over Caterpillar because Caterpillar, on information and belief, conducts business in the State of California and within this district, including contracts with California corporations and the advertising and sale of its products to California residents.  In addition, Caterpillar entered into the contracts at issue in this case with Quanergy, a business with its principal offices in this judicial district, and Caterpillar's actions, as alleged herein, give rise to damages to Quanergy that are felt in this judicial district.  Defendants Velodyne and Caterpillar are subject to the general jurisdiction of this Court because they have regular and systematic contacts with this forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) because Velodyne and Caterpillar are subject to personal jurisdiction in this District.

8.      This District is also the proper venue because the Evaluation Agreement and the Sales Orders between Caterpillar and Quanergy expressly provide for jurisdiction and venue in California.

**INTRADISTRICTS ASSIGNMENT**

9.      This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(a).

**GENERAL ALLEGATIONS**

10.      Plaintiff Quanergy is the leader in automotive and industrial grade 3D time-of-flight LiDAR sensors.  Quanergy develops smart sensing solutions for real-time 3D mapping and object detection, tracking, and classification.  Quanergy's products can be used in various markets for 3D LiDAR sensors and LiDAR-based sensing systems.  Key markets include passenger vehicles, corporate, commercial, municipal fleets, and digital mapping fleets.  Other applicable markets for Quanergy's products include security, surveillance, smart spaces, logistics, warehouse and distribution center automation, robotics, construction, agriculture and mining vehicles, surveying, archaeology, geology, aeronautics, unmanned aerial vehicles (UAVs), wind

turbine operation optimization and solar farm installation optimization. In the automotive space, Quanergy's LiDAR sensors enable broad deployment of advanced driver assistance systems (ADAS) and autonomous driving systems. Quanergy's M8-1 LiDAR Sensor (the "M8-1 Sensor") is made for use with such systems.

11.     Quanergy sells its M8-1 Sensors and other products throughout the United States and worldwide.

12.     Quanergy has taken numerous measures to protect its trade secrets and other confidential technology and information incorporated into its M8-1 Sensor. First, Quanergy has installed a tamper-proof seal on the outside casing of each M8-1 Sensor which leaves silver markings on the casing if it is removed or tampered with, thereby deterring and preventing unauthorized access to the confidential internal structures, design, assembly and other contents of the M8-1 Sensor. In addition, the cap and base of the casing (under the tamper proof seal) are glued with a cured industrial grade adhesive that cannot be peeled and would require laborious cutting or sawing for separation and exposure of the confidential internal structures, design, assembly and other contents of the M8-1 Sensor.

13.     As an additional measure to maintain the secrecy of its technology, Quanergy also requires each purchaser of its products to accept certain Terms of Sale that are included in the sales orders signed by the purchaser. Included in these Terms of Sale is a provision that imposes use and disclosure restrictions on the purchaser. This provision states in full:

> **8.  Restrictions:**  Purchaser represents and warrants that it will not (and will not allow any third party to): (a) modify, adapt, translate, or create derivative works of the Product, or any Software, (b) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Product, or any Software, (c) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available any Software, or (d) remove proprietary notices on Product or its accompanying documentation. Additionally, Purchaser may not resell the Product to any Third Party unless Purchaser has executed a reseller agreement with Company.

14.     Defendant Velodyne is one of Quanergy's competitors. Among its products, Velodyne sells the HDL-64E LiDAR sensor which it touts on its website to be "designed for obstacle detection and navigation of autonomous ground vehicles and marine vessels." It further asserts that "[i]ts durability, 360° field of view and very high data rate makes this sensor

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

COMPLAINT

ideal for the most demanding perception applications as well as 3D mobile data collection and mapping applications," and that "[t]he HDL-64E's innovative laser array enables navigation and mapping systems to observe more of their environment than any other LiDAR sensor."

15.     In or around August of 2012, Velodyne announced that it had entered into an agreement with Caterpillar under which Velodyne granted Caterpillar exclusive rights to use and manufacture Velodyne's HDL-64 LiDAR-sensing system for "off-road vehicles, in the areas of mining, construction, quarry and aggregate, earth-moving, and worksite planning when used in any vehicle design for those markets."

16.     In or around the spring of 2015, representatives of Caterpillar approached Quanergy representing that Caterpillar was interested in making an investment in Quanergy and potentially purchasing products from Quanergy.  Quanergy was aware of a relationship that had been publicly announced between Caterpillar and Velodyne and was initially skeptical of Caterpillar's expressed interest; however, one or more representatives of Caterpillar represented to Quanergy that Caterpillar was unhappy with Velodyne's products and its relationship with Velodyne.

17.     Quanergy and Caterpillar entered into a Mutual Non-Disclosure Agreement (the "NDA") on or about June 23, 2015.  Upon information and belief, Michael Young, Director at Caterpillar Ventures, on behalf of, and acting as an agent of Caterpillar, reviewed and executed the NDA on Caterpillar's behalf.  Quanergy's CEO, Dr. Louay Eldada signed the NDA on behalf of Quanergy.

18.     Under Section 2(i) of the NDA, Quanergy and Caterpillar both agreed to:

(i) accord Confidential Information received by it from the Disclosing Party with the same degree of confidential treatment that it accords its similar proprietary and confidential business and technical information, which shall not be less than the care a reasonable business person would exercise under similar circumstances, (ii) use such Confidential Information only in connection with the Possible Transaction and the Receiving Party's evaluation thereof, and (iii) not disclose any of such Confidential Information to any person other than its affiliates and its and their directors, officers, employees, advisors, and representatives (collectively "Representatives") who have a need to know in connection with the Possible Transaction and the Receiving Party's evaluation thereof.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

19.     Under Section 6 of the NDA, the "Agreement shall expire on June 23, 2016, or the date either Party notifies the other Party in writing that discussions concerning the Possible Transaction are terminated, whichever occurs first (the "Termination Date")"; however, "[a]ll obligations of confidentiality and all restrictions on the use of Confidential Information under this Agreement shall remain in effect for a period of five (5) years following the Termination Date."

20.     By entering into the NDA, Caterpillar entered into a confidential relationship with Quanergy.

21.     Quanergy disclosed Confidential Information to Caterpillar in accordance with the terms of the NDA, including documents revealing Quanergy's product roadmap and product details.

22.     On or about August 27, 2015, Nathaniel Hart and Melissa McTavish at Caterpillar contacted the business development and sales team at Quanergy to discuss potentially purchasing M8-1 Sensors for use in Caterpillar vehicles.

23.     On or about September 1, 2015, Caterpillar agreed to purchased one M8-1 Sensor evaluation kit and Quanergy delivered it to Caterpillar on or about November 23, 2015.  This sale was subject to the terms of a purchase order and the terms of an incorporated Evaluation Agreement that Quanergy had provided to Caterpillar to document the sale.

24.     Under the terms of the Evaluation Agreement, the materials Quanergy provided constituted "Evaluation Materials," and Caterpillar was subject to the followings restrictions under Section 2 of the Evaluation Agreement, among others:

> **Restrictions**. COMPANY represents and warrants that it will use the Evaluation Materials only for the Permitted Use and will not (and will not allow any third party to): (a) reproduce, modify, adapt, alter, translate, or create derivatives of the Evaluation Materials or any portion thereof; (b) disclose or otherwise assign or transfer the Evaluation Materials or any part thereof or use them for the benefit of a third party; (c) reverse assemble, disassemble, reverse compile or reverse engineer the Evaluation Materials, or otherwise attempt to discover any underlying algorithms, code, functions or other proprietary information relating to the Evaluation Materials; (d) remove or destroy any copyright notices, proprietary markings or confidential legends placed upon or contained within the Evaluation Materials or any copies thereof or on any accompanying documentation; or (e) use the Evaluation Materials to develop competitive products or technology. During the term of this Agreement, COMPANY may also be provided limited access to the QUANERGY Cloud Service, and any such access shall be subject to (and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

COMPANY hereby agrees to) QUANERGY's standard Terms of Service. For purposes of clarity, Evaluation Materials will be deemed to include the QUANERGY Cloud Service to the extent it is made available to COMPANY.

25.    The Evaluation Agreement also contained a strict Confidentiality provision which governed any "business, technical and financial information [Caterpillar] learns in connection with the Agreement." This provision states:

> **Confidentiality; Feedback.**  COMPANY acknowledges that all business, technical and financial information it learns or obtains in connection with this Agreement constitutes highly valuable confidential and proprietary information of QUANERGY ("Proprietary Information"). Such Proprietary Information shall belong solely to QUANERGY and includes, without limitation, the Evaluation Materials, related features and modes of operation, non-public information regarding QUANERGY's business, and all related trade secrets, know-how, inventions (whether or not patentable), processes, algorithms, software design and architecture, computer code, internal documentation, information regarding business strategies, design and function specifications, problem reports, analysis and performance information, benchmarks, and the like.  With respect to Proprietary Information: (a) COMPANY shall not use (except as expressly authorized by this Agreement) or disclose Proprietary Information without the prior written consent of QUANERGY unless such Proprietary Information becomes part of the public domain without breach of this Agreement by COMPANY or its representatives; (b) COMPANY agrees to take reasonable measures to maintain the Proprietary Information in strict confidence; (c) COMPANY will disclose the Proprietary Information only to those of its employees as are necessary for the Permitted Use, and only after such employees have agreed in writing to be bound by terms no less restrictive than the provisions of this Agreement; and (d) COMPANY will not transfer or export any Proprietary Information or any direct product thereof.  If COMPANY provides QUANERGY any feedback, ideas, recommendations or suggestions relevant to the Evaluation Materials ("Feedback"), COMPANY grants QUANERGY, without charge, the fully paid-up, irrevocable license to use, modify, commercialize and otherwise fully exercise and exploit such Feedback and all related intellectual property or other rights (and to allow others to do so) for any purpose. These rights survive termination of this Agreement in perpetuity.

26.    The Evaluation Agreement also states that "[t]his Agreement shall be governed by the laws of the State of California (without regard to the conflicts of laws provisions) and any claim or action arising hereunder must be brought in the courts in California (and each party hereby consents to the jurisdiction thereof). In any action to enforce this Agreement the prevailing party will be entitled to costs and attorneys' fees."

27.    On or about March 2, 2016, representatives of Caterpillar again contacted Quanergy to discuss potentially purchasing another M8-1 Sensor for use in Caterpillar vehicles.

28.    On or about March 18, 2016, Caterpillar executed two sales orders with Quanergy under which Caterpillar purchased one M8-1 Sensor and one M8-1 Sensor accessory kit (the

"Sales Orders").      Also in connection with Caterpillar's purchase under the Sales Orders, Caterpillar returned the M8-1 sensor that had been shipped in November of 2015 in exchange for an updated version of the sensor.

29.      On information and belief, Emily Trask acting as an agent of Caterpillar, reviewed the Terms of Sale in the Sales Orders and executed them on Caterpillar's behalf.  Patrick Brunett executed the two Sales Orders on behalf of Quanergy on or about March 28, 2016.  In executing the Sales Orders, Caterpillar agreed that "[b]y ordering, accepting, or retaining any Products from Company after receipt of these Terms or a notice that sales are subject to these Terms, the customer ("Purchaser") agrees to be legally bound by these Terms."

30.      Caterpillar thereby agreed to use restrictions identical to those set forth in Paragraph 13, above.  Caterpillar also agreed to the following Limited Warranty provision under Section 9 of the Sales Orders:

> **9.  Limited Warranty:**  Unless Company provides a different limited warranty with the products, the warranty terms and conditions shall be subject to the following Limited Warranty (the "Limited Warranty"), which is non-assignable.  The Limited Warranty covers the original purchaser of the Products installed on the Purchaser equipment for which the Product was purchased, against defects in material or workmanship for a period of one (1) year from the date of purchase (or as required by applicable law).  The sole obligation of Company and the exclusive remedy of Purchaser under this Limited Warranty is to repair or replace, at Company's discretion, any Product, which is determined by Company to have been defective in materials or workmanship.  In servicing Purchaser's Product, Company may, at its sole discretion, use parts or products that are new or refurbished and equivalent to new in performance and reliability.  Company will retain any and all replaced parts or Products at its own property and the replacement parts or Products will become Purchaser's property, Company will not be responsible for conditions arising as a result of installation.  The following defects are excluded from warranty coverage:
>
> (a) Damage attributable to accident, abuse, neglect, improper installation, and improper maintenance; (b) installation on equipment other than the mining equipment  for which the Product was designed; (c) Operating outside the specified temperatures; (d) Repair or alteration of the Product by any party other than Company; (e) Use of Product in a manner or purpose for which it was not designed or intended by the Company as specified by Purchaser; (f) Damage due to corrosion (including due to water quality, liquids utilized and air), mineral deposits, mold, fungus, abrasion or bacteria; (g) Ordinary wear and tear; (h) Any portion or component of any Product that is not supplied by Company, regardless

of the cause of the failure of such portion or component; (i) Products on which the unit identification tags, tamper resistance, or labels have been removed or defaced; (j) Products on which payment to Company or to the distributor or installing contractor, is in default.

31.     The Sales Orders also contain a choice of law and attorneys' fee provision which states in full:

> These Terms and any disputes arising out of or in connection with these Terms ("Disputes") shall be governed by California laws without regard to conflict of laws and excluding the UN Convention of Contracts for the International Sale of Goods (CISG).  All disputes are subject to the exclusive jurisdiction of courts in California, with the sole exception that (1) Purchaser may also be sued for payments at its place of business and any shipment destination and (2) each party may obtain injunctive relief from any court of competent jurisdiction worldwide. The prevailing party in any Disputes shall be entitled to reimbursement of all legal fees including reasonable attorneys' fees from the other party.

32.     Caterpillar was in a confidential relationship with Quanergy as of June 2015, and Caterpillar was on notice that Quanergy provided the products and Confidential Information subject to communicated expectations of confidentiality and the confidentiality and use restrictions set forth in the NDA, the Evaluation Agreement, and the Sales Orders.

33.     On or about July 1, 2016, Caterpillar contacted Quanergy requesting a replacement for a M8-1 Sensor that was delivered pursuant to the Sales Orders, purporting to invoke the limited warranty provision (Section 9) of the Sales Orders.  Quanergy asked Caterpillar to return the M8-1 Sensor so that Quanergy could inspect the product and process Caterpillar's request. Caterpillar returned the M8-1 Sensor to Quanergy on or about July 15, 2016.

34.     Upon receiving the M8-1 Sensor from Caterpillar, Quanergy inspected the damaged unit and determined that the M8-1 Sensor had been subjected to extreme vibration and heat conditions until it failed.  This indicated that the M8-1 Sensor had been used outside of its contractually limited and intended use on mining equipment.  Quanergy also discovered that the tamper-proof seal on the M8-1 Sensor had been removed and that it was disassembled by cutting the cured, industrial grade adhesive holding the casing together in violation of the Terms of Sale.

35.     On or about August 3, 2016, Quanergy informed Mr. Hart and Ms. McTavish at Caterpillar that Quanergy had determined that Caterpillar had used the M8-1 Sensor outside the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

COMPLAINT

contractually limited use and that Caterpillar had tampered with the product, thereby violating the Terms of Sale in the parties' agreements.  However, in order to retain Caterpillar as a major customer with market power, and in reliance upon its confidential relationship with Caterpillar, Quanergy agreed to replace the M8-1 Sensor purchased by Caterpillar for free.

36.    Unbeknownst to Quanergy at the time, and upon information and belief, Caterpillar provided Quanergy's competitor, Velodyne, with access to one or more of Quanergy's M8-1 Sensors without notifying Quanergy or obtaining its consent so that Velodyne could examine and study Quanergy's proprietary and trade secret technology.  Caterpillar's actions were in violation of the confidentiality obligations and use restrictions that applied to Quanergy's products and information, as well as the confidential relationship between Quanergy and Caterpillar.

37.    Upon information and belief, Caterpillar unlawfully used and disclosed Quanergy's Confidential Information and misappropriated Quanergy's trade secrets by: 1) disclosing Quanergy's Confidential Information and trade secrets to Quanergy's competitor, Velodyne, in violation of the duties and obligations contained in the NDA, Evaluation Agreement, and Sales Orders, and 2) using and continuing to use Quanergy's Confidential Information and trade secrets without Quanergy's  consent in violation of the confidential relationship with Quanergy and the protections imposed by the NDA, Evaluation Agreement, and Sales Orders.

38.    Upon information and belief, Velodyne misappropriated Quanergy's trade secrets by acquiring Quanergy's Confidential Information and trade secrets from Caterpillar when it knew or had reason to know that such information was improperly obtained, used and disclosed by Caterpillar in violation of one or more contractual or other legal duties.

39.    Upon information and belief, Velodyne also misappropriated Quanergy's trade secrets by using and continuing to use Quanergy's proprietary information and trade secrets without the express or implied consent of Quanergy when, at the time of use, Velodyne knew or had reason to know that its knowledge of the proprietary information and trade secrets was

Cooley LLP
Attorneys At Law
Palo Alto

28

**COMPLAINT**

derived from or through Caterpillar in violation of Caterpillar's contractual and other legal duties of confidentiality and restricted use.

40.     Upon information and belief, and based on the above stated pattern of misappropriation and other unlawful conduct, the Defendants engaged in a clandestine, coordinated scheme of industrial espionage to misappropriate Quanergy's trade secrets and technology for unlawful competitive advantage and to harm Quanergy.

41.     During the summer of 2016, Quanergy and Caterpillar discussed renewing the mutual NDA given that it expired on June 23, 2016.  However, Caterpillar refused to renew the mutual NDA prior to the expiration of the mutual NDA.  Nevertheless, the confidentiality provisions survive until five years after the expiration of the Mutual NDA.

42.     During the August 3, 2016 call with Quanergy's CEO, Dr. Louay Eldada, Mr. Hart and Ms. McTavish from Caterpillar explained that Caterpillar would not enter into another mutual NDA and that Caterpillar instead would like Quanergy to enter into a separate, unilateral NDA to protect Caterpillar's proprietary information.  During this same call, Mr. Eldada provided several reasons why Quanergy believed a mutual NDA was necessary, including the need to insure that Caterpillar did not share Quanergy's proprietary information with Quanergy's competitors.  In response to Mr. Eldada's comment, Mr. Hart and Ms. McTavish explained that Caterpillar still had a joint program with Velodyne to develop LiDAR sensors and that Caterpillar could not enter into another mutual NDA at this time.  This was the first time that Caterpillar had ever indicated that its relationship with Velodyne was continuing and constituted a threat to Caterpillar's ability to uphold obligations to protect Quanergy's Confidential Information and trade secrets.

43.     On August 4, 2016, Dr. Eldada received a letter dated August 3, 2016 from Velodyne's counsel, Mr. Douglas Lumish of Latham & Watkins, alleging that Quanergy infringed U.S. Patent No. 7,969,558 ("the '558 patent") entitled "High Definition LIDAR System" granted on June 28, 2011.  Upon information and belief, Velodyne is the alleged owner of and/or has enforcement rights to the '558 patent.  A true and accurate copy of the '558 patent is attached as Exhibit A.

Cooley LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

44.     Velodyne states in the August 3, 2016 letter that "[i]t has recently come to Velodyne's attention that Quanergy … manufactures and sells 3D LiDAR sensors, including the M8-1 LiDAR Sensor" and that Velodyne had "review[ed] Quanergy's M8-1 LiDAR Sensor." The August 3, 2016 letter alleges that Quanergy's M8-1 LiDAR Sensor infringes one or more of the claims of the '558 patent" and demands that Quanergy "immediately cease and desist from all further activity that infringes the '558 Patent."   Velodyne explicitly asserted that absent compliance with its demands, "Velodyne is prepared to take all steps necessary to protect its intellectual property rights."

45.     The August 3, 2016 letter also states that Velodyne had "reviewed" Quanergy's M8-1 Sensor.  However, Velodyne has never been a customer of Quanergy and had no legitimate means of obtaining access to the device.  On information and belief, Velodyne obtained access to the Quanergy sensor through the unlawful actions alleged herein.

46.     On August 31, 2016, Quanergy's counsel, Erik Milch, spoke with Velodyne's counsel, Ann Marie Walsh, to discuss the August 3, 2016 cease and desist letter.  During that conversation, Ms. Walsh stated that the only acceptable outcome for Velodyne is for Quanergy to remove its product from the market.  In a follow-up discussion on September 9, 2016, Mr. Milch informed Ms. Walsh that Quanergy would not agree to remove the M8-1 from the market. Ms. Walsh responded by stating that it seems that the parties are at an impasse.

47.     As a result of Velodyne's aggressive threats of patent infringement by Quanergy, and repeated demands that Quanergy remove its M8-1 product from the market, an immediate, concrete, actual, substantial and justiciable controversy now exists between Quanergy and Velodyne regarding allegations of infringement of the '558 patent.   This is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Quanergy seeks a declaration from this Court resolving the present controversy.

///

///

**COUNT I**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '558 PATENT**

48.     Quanergy incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as though set forth in full herein.

49.     Velodyne has accused Quanergy of infringing the '558 patent at least by making and selling the M8-1 LiDAR Sensor.

50.     Quanergy has not infringed and is not infringing, directly, indirectly, contributorily, by active inducement, or otherwise, any valid and enforceable claim of the '558 patent.

51.     Quanergy does not infringe independent claim 1 of the '558 patent at least because the M8-1 does not include "a rotary component configured to rotate the plurality of laser emitters and the plurality of avalanche photodiode detectors at a speed of at least 200 RPM" as required by both independent claims 1 and 19.

52.     The term "a rotary component configured to rotate the plurality of laser emitters and the plurality of avalanche photodiode detectors" invokes 35 U.S.C. 112, sixth paragraph.  The specification requires that the rotary component include a "rotary power coupling configured to provide power from an external source to the rotary motor, the photon transmitters, and the photon detectors, as well as signal [sic] in and out of the unit." '558 patent, col. 3, ll. 10-14.

53.     The M8-1 Sensor does not include such structure, or any equivalents of such structure.  Accordingly, for at least this reason, the M8-1 Sensor does not meet every limitation of claims 1 and 19 of the '558 patent.

54.     At least because Quanergy does not infringe either independent claim of the '558 patent, it does not infringe any dependent claim of the '558 patent.

55.     An actual and justiciable case or controversy exists between Quanergy and Velodyne concerning alleged infringement of the '558 patent, which requires a declaration of rights by this Court.

56.     Based on the acts, conduct, and statements of Velodyne, Quanergy has formed a

12.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

reasonable apprehension and belief that Velodyne intends to and will sue Quanergy for alleged infringement of the '558 patent.

57.     Velodyne's incorrect allegation that Quanergy infringes claims of the '558 patent has caused, and will continue to cause, damage to Quanergy.

58.     Quanergy is entitled to a judicial determination and declaration that it does not infringe and has not infringed, directly, indirectly, contributorily, by active inducement or otherwise, any valid and enforceable claim of the '558 patent.

COUNT II

BREACH OF CONTRACT (THE SALES ORDERS) AGAINST CATERPILLAR

59.     Quanergy incorporates by reference the allegations set forth in paragraphs 1 through 58 of this Complaint as though set forth in full herein.

60.     The written Sales Orders between Caterpillar and Quanergy constitute valid contracts, supported by consideration.

61.     Under the terms of the Sales Orders, Caterpillar agreed, among other things, to the following: "Purchaser represents and warrants that it will not (and will not allow any third party to): (a) modify, adapt, translate, or create derivative works of the Product, or any Software, (b) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Product, or any Software, (c) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available any Software, or (d) remove proprietary notices on Product or its accompanying documentation."

62.     Upon information and belief, Caterpillar breached this provision by, among other things: 1) modifying the M8-1 Sensor by opening the casing to the product in violation of the proprietary notice; 2) reverse assembling, disassembling, or otherwise attempting to derive the source code for the Product; 3) loaning, transferring, disclosing, or otherwise making available the product to Quanergy's competitor, Velodyne; and 4) removing the seal from the casing of M8-1 Sensor and thereby removing the Product's proprietary notices.

63.     Quanergy performed all conditions, covenants, and promises required to be

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

performed on its part under the Sales Orders.

64.     As a result of Caterpillar's contractual breaches, Quanergy has been injured in an amount to be determined at trial.

65.     Quanergy will suffer irreparable injury by reason of the acts, practices, and conduct of Caterpillar alleged above until and unless the Court enjoins such acts, practices or conduct.

**COUNT III**

**MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA CIVIL CODE § 3426**

**AGAINST ALL DEFENDANTS**

66.     Quanergy incorporates by reference the allegations set forth in paragraphs 1 through 65 of this Complaint as though set forth in full herein.

67.     Quanergy is informed and believes, and on that basis alleges, that after entering into the NDA, Evaluation Agreement, and Sales Orders with Quanergy, Caterpillar misappropriated Quanergy's trade secrets by disclosing Quanergy's trade secrets to Quanergy's competitor, Velodyne, without Quanergy's express or implied consent and in violation of the contractual duties and obligations restricting Caterpillar's disclosure of that information and use of Quanergy's trade secrets concerning Quanergy's M8-1 Sensors.

68.     Quanergy alleges, upon information and belief, that Velodyne misappropriated Quanergy's trade secrets through acquisition by improper means in that Velodyne obtained the trade secrets from Caterpillar knowing or having reason to know that such acquisition and use was accomplished through Caterpillar's violation of legal duties to Quanergy.

69.     The acts of Defendants as alleged herein constitute misappropriation of trade secrets, as defined in Civil Code section 3426.1, subd. (b).

70.     The trade secrets include information comprising the confidential internal design, structure, assembly, arrangement and architecture of the M8-1 Sensor, including software and source code, and of the M8-1 Sensor Accessory Kit, all of which Quanergy provided to Caterpillar pursuant to restrictions on disclosure and use of such information.

**COMPLAINT**

**71.**     At all material times, the trade secrets were the subject of reasonable efforts to maintain their secrecy.  First and foremost, Quanergy only discloses its proprietary information and products to third parties subject to confidentiality obligations and use restrictions.  Moreover, Quanergy includes various mechanisms in its M8-1 Sensors to protect the confidentiality and limit the use of its proprietary technology incorporated therein, including installing tamper-proof seals on the outside casing of each M8-1 Sensor and cured industrial grade adhesive between the cap and base of the casing.

**72.**     Quanergy's trade secrets identified herein derive actual and potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

**73.**     As a result of Defendants' actions, Quanergy was damaged, and Defendants' were unjustly enriched through their wrongdoing in an amount to be proven at trial.

**74.**     Alternatively, if the amount of damages or unjust enrichment are difficult to prove, Quanergy is entitled to a reasonable royalty under Civil Code section 3426.3, subd. (b).

**75.**     As an additional proximate result of Defendants' acts of misappropriation, Quanergy has sustained, and unless this court intervenes to restrain Defendants' conduct, Quanergy will continue to sustain, great and irreparable injury in that Quanergy will lose customers and accounts, causing injury to Quanergy's shareholders, employees, licensees, suppliers, and contractors, and damaging Quanergy's business.  Quanergy has no adequate remedy at law for these injuries as unless Defendants are restrained from using the confidential information in the future, Quanergy will be compelled to bring a multiplicity of suits to protect its interests.

**76.**     Quanergy is informed and believes, and on that basis alleges, that Defendants committed their acts of misappropriation willfully and maliciously in that Defendants intended by their conduct to drive Quanergy out of the market for producing the M8-1 Sensor.  Defendants' conduct justifies an award to Quanergy of exemplary damages under Civil Code section 3426.3, subd. (c) and of attorney's fees under Civil Code section 3426.4.

**COUNT IV**

**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016**

**(18 U.S.C. §1836(B)) AGAINST ALL DEFENDANTS**

77.     Quanergy incorporates by reference the allegations set forth in paragraphs 1 through 76 of this Complaint as though set forth in full herein.

78.     Quanergy is informed and believes, and on that basis alleges, that after entering into the NDA, Evaluation Agreement, and Sales Orders with Quanergy, Caterpillar misappropriated Quanergy's trade secrets by disclosing Quanergy's trade secrets to Quanergy's competitor, Velodyne, without Quanergy's express or implied consent and in violation of the contractual duties and obligations restricting Caterpillar's disclosure of that information and use of Quanergy's trade secrets concerning Quanergy's M8-1 Sensors.

79.     Quanergy alleges, upon information and belief, that Velodyne misappropriated Quanergy's trade secrets through acquisition by improper means in that Velodyne obtained the trade secrets from Caterpillar knowing or having reason to know that such acquisition and use was accomplished through Caterpillar's violation of legal duties to Quanergy.

80.     The confidential and proprietary information and technology Quanergy entrusted to Caterpillar is related to Quanergy products used in, or intended for use in, interstate or foreign commerce.  As alleged above, Quanergy sells products throughout the United States and the world and the confidential trade secret information obtained by Caterpillar relates to such products.

81.     The trade secrets include information comprising the confidential internal design, structure, assembly, arrangement and architecture of the M8-1 Sensor and of the M8-1 Sensor Accessory Kit, , including software and source code, all of which Quanergy provided to Caterpillar pursuant to restrictions on disclosure and use of such information.

82.     At all material times, the trade secrets were the subject of reasonable efforts to maintain their secrecy.  First and foremost, Quanergy only discloses its proprietary information and products to third parties subject to confidentiality obligations and use restrictions.  Moreover,

**COMPLAINT**

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Quanergy includes various mechanisms in its M8-1 Sensors to protect the confidentiality and limit the use of its proprietary technology incorporated therein, including installing tamper-proof seals on the outside casing of each M8-1 Sensor and cured industrial grade adhesive between the cap and base of the casing.

83.     Quanergy's trade secrets identified herein derive actual and potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

84.     On information and belief, Quanergy alleges that all or some Defendants' misappropriation of Quanergy's trade secrets identified herein occurred after the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, became effective on May 11, 2016.

85.     As a result of Defendants' actions, Quanergy was damaged, and Defendants' were unjustly enriched through their wrongdoing in an amount to be proven at trial.

86.     Alternatively, if the amount of damages or unjust enrichment are difficult to prove, Quanergy is entitled to a reasonable royalty under 18 U.S.C. §1836(b)(3)(B)(ii).

87.     As an additional proximate result of Defendants' acts of misappropriation, Quanergy has sustained, and unless this court intervenes to restrain Defendants' conduct, Quanergy will continue to sustain, great and irreparable injury in that Quanergy will lose customers and accounts, causing injury to Quanergy's shareholders, employees, licensees, suppliers, and contractors, and damaging Quanergy's business.  Quanergy has no adequate remedy at law for these injuries as unless Defendants are restrained from using the confidential information in the future pursuant to 18 U.S.C. §1836(b)(3)(A), Quanergy will be compelled to bring a multiplicity of suits to protect its interests.

88.     Quanergy is informed and believes, and on that basis alleges, that Defendants committed their acts of misappropriation willfully and maliciously in that Defendants intended by their conduct to drive Quanergy out of the market for producing the M8-1 Sensor.  Defendants' conduct justifies an award to Quanergy of exemplary damages under 18 U.S.C. §1836(b)(3)(C) and attorneys' fees under 18 U.S.C. §1836(b)(3)(D).

**COUNT V**

**CONSTRUCTIVE FRAUD AGAINST CATERPILLAR**

**89.** Quanergy incorporates by reference the allegations set forth in paragraphs 1 through 88 of this Complaint as though set forth in full herein.

**90.** Caterpillar commenced a confidential relationship with Quanergy by entering into the NDA. Pursuant to this confidential relationship, Caterpillar represented an interest in investing in Quanergy, and in purchasing Quanergy products, knowing that such purchases were subject to expectations and obligations of confidentiality and restricted use.

**91.** Caterpillar failed to disclose material facts to Quanergy at the time the parties entered into these agreements, namely, upon information and belief, 1) that Caterpillar was participating in a joint development program with Velodyne that directly competed with Quanergy and that this relationship jeopardized Caterpillar's ability to uphold its legal obligations to Quanergy, 2) that Caterpillar intended to allow a third party, without the permission or consent of Quanergy, to exploit and utilize Quanergy's M8-1 Sensor to harm Quanergy's business; 3) that Caterpillar purchased the M8-1 Sensor, disassembled the M8-1 Sensor, and disclosed confidential and proprietary information about the M8-1 Sensor to Velodyne, all in violation of the NDA, Evaluation Agreement, and Sales Orders; and 4) without disclosing its true intentions about possible investment in Quanergy.

**92.** Had Caterpillar disclosed the existence of the aforementioned facts and intentions, Quanergy would not have provided its sensors and other products, or the proprietary information included or sold with its products to Caterpillar and would have otherwise acted differently, such as terminating its confidential relationship with Caterpillar.

**93.** As a result of Caterpillar's intentional actions, Quanergy was damaged, and Caterpillar was unjustly enriched with proceeds of its wrongdoing.

**94.** The conduct by Caterpillar was fraudulent, oppressive, and malicious, and as such constitutes the basis for the award of punitive damages pursuant to California Civil Code § 3294.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

## PRAYER FOR RELIEF

**WHEREFORE**, Quanergy requests that the Court enter a judgment in its favor and against Velodyne and Caterpillar as follows:

A.      Enter judgment for Quanergy and against Velodyne and Caterpillar on all counts asserted in this complaint;

B.      Declare that Quanergy has not and does not infringe any valid and enforceable claim of '558 patent;

C.      Enjoin Velodyne, and its officers, directors, agents, counsel, servants, and employees and all persons in active concert or participation with any of them, from attempting to enforce the '558 patent against Quanergy or any customer of Quanergy by reason of such customer's use of Quanergy's products;

D.      Find this case to be an exceptional case pursuant to 35 U.S.C. § 285 and award Quanergy its attorneys' fees and expenses;

E.      Enter preliminary and permanent injunctions ordering that:

1)      all Defendants and all others acting in concert or privity with them, be enjoined from using, copying, publishing, disclosing, transferring, importing, selling or otherwise distributing, directly or indirectly, any of Quanergy's trade secret, confidential, and proprietary information, by (i) selling any product incorporating or derived from all or part of Quanergy's trade secret, confidential, and proprietary information; (ii) selling or licensing such information to any third party; (iii) providing any good or service that incorporates such information to any third party; or (iv) any other means; and

2)      all Defendants return any of Quanergy's trade secret, confidential, and proprietary information still retained by the Defendants; and

3)      Defendants be required to account for all gains, profits, and advantages derived from its acts of misappropriation and other violations of law; and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**COMPLAINT**

4)      all gains, profits and advantages derived by Defendants from acts of misappropriation and other violations of law be deemed to be in constructive trust for the benefit of Quanergy.

F.      Award compensatory damages, unjust enrichment, or royalties stemming from Defendants' misappropriation of trade secrets pursuant to Cal. Civ. Code § 3426.3 and 18 U.S.C. §1836(b)(3)(B);

G.      Find that Defendants' misappropriation of Quanergy's trade secrets willful and malicious and award double damages pursuant to Cal. Civ. Code § 3426.3 and 18 U.S.C. §1836(b)(3)(C);

H.      Award Quanergy its attorney fees pursuant to Cal. Civ. Code § 3426.4 and 18 U.S.C. §1836(b)(3)(D);

I.      Find that Caterpillar's conduct was fraudulent, oppressive, and malicious pursuant to California Civil Code § 3294 and award Quanergy punitive damages;

I.      Award restitution, unjust enrichment, and compensatory damages according to proof at trial; and

J.      Grant Quanergy such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**95.**      Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Quanergy Systems, Inc. demands a trial by jury in this action.

Dated: September 13, 2016                COOLEY LLP


                                         */s/ Mark Lambert*
                                         Mark F. Lambert
                                         Attorneys for Plaintiff Quanergy Systems, Inc.