(Counsel listed on signature pages)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

Quanergy Systems, Inc.

        Plaintiff(s),

  vs.

Velodyne LiDAR, Inc.

        Defendant(s).

Case Number: 16-cv-05251-EJD

STIPULATION & [~~PROPOSED~~] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION

Upon the stipulation of the parties, the Court ORDERS as follows:

**I.  GENERAL PRINCIPLES**

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 Conference.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties have read and will comply with the District's E-Discovery Guidelines ("Guidelines").

## II. PRESERVATION

6. The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

7. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    b) On-line access data such as temporary internet files, history, cache, cookies, and the like.

    c) Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section V).

    d) Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    e) Server, system or network logs.

    f) Data remaining from systems no longer in use that is unintelligible on the systems in use.

    g) Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

## III. PRODUCTION OF EMAILS

8. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

9. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

10. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

11. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

12. Each requesting party shall limit its email production requests to a total of five (5) custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

13. Each requesting party shall limit its email production requests to a total of five (5) search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

14. The parties agree to meet and confer in good faith on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are

inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

## IV.     PRODUCTION FORMATS

The parties agree that each of their document productions shall comply with the following requirements:

### A.     Searchable Documents

15.    If a document is searchable in its native format, the producing party will produce it in a searchable form.

### B.     Hard Copy Documents

16.    Optical character recognition (OCR) data will be provided with images of hard copy documents to the extent such OCR data is in the possession of the producing party or its counsel; provided, however, that the producing Party is not required to OCR hard copy documents as part of its document production.  If documents are OCR'd, document level TXT files will be provided (one TXT file for each document).  The documents should be logically unitized to preserve page breaks between documents and otherwise allow separate documents to be identified.

### C.     Electronic Documents

17.     Electronic documents will be produced with extracted text. The extracted text shall be in document text level files, rather than embedded text files, and the extracted text will not be in the database load file.

### D.     Text-searchable or OCR Format

18.     To the extent a producing Party provides electronically-produced files in text-searchable or OCR format, the receiving Party accepts the searchable portion of the files "as is," and the producing Party accepts no liability as to the accuracy of searches conducted in such files.

19.     If there are any Chinese, Japanese, or Korean type of characters, the preferred format for text-searchable or OCR files is Unicode (UTF-8), which will be provided when available. Nothing in this Order requires a producing Party to generate OCR files or to convert text-searchable files to another format.

### E.     Digital Image Files

20.     Scanning should be single-page black-and-white TIFF images (group iv / 300 dpi). Therefore, whether an electronic document is imaged or a paper document is imaged, both will be the same format. PDF files will be produced with document level text files, instead of embedded text. Files shall be produced with a load file containing the following information in the following mutually agreed upon manner:

  a)   Beginning Document Bates Number. NOTE: The Bates numbers will have sufficient leading zeros (at least 7) and no spaces or symbols (e.g., WA0000001);

  b)   Ending Document Bates Number;

  c)   Beginning Attachment Bates Number;

  d)   Ending Attachment Bates Number;

  e)   File Extension; and

  f)   Confidentiality Designation.

### F. Color Images

21. The producing party may produce color documents as black and white documents with the option to obtain color documents from the producing party if the receiving party specifically requests color copies of the documents and upon a showing of good cause by the requesting party. For the avoidance of doubt, good cause includes, but is not limited to, the following: (a) the documents include schematics, diagrams, graphs, charts, etc.; (b) the documents are unclear or illegible; or (c) the color version of the document serves to differentiate the information presented in the document. Nothing in this provision precludes a party from voluntarily producing any document in color.

### G. Native Files

22. If any documents are produced in native format, a database load file will be provided that includes a NATIVE FILE field path. Native files should be produced in a separate folder (e.g., NATIVES\001 and NATIVES\002) if possible. Excel spreadsheets and other file types not readily reduced to usable PDF or TIFF format may be produced in native format. The parties each reserve the right to request that each Excel spreadsheet be produced in native form. Should any party request any other document be produced in its native electronic format, the Parties agree to meet and confer in good faith to determine whether production of the document is reasonably necessary and appropriate.

### H. Load Files

23. At a minimum, DAT and OPT load files shall be provided, including for PDF files.

### I. Paper and PDF Copies of Native Electronic Documents

24. To the extent that a Party prepares paper or PDF (or the equivalent) copies of any electronic documents produced in their native format for any purpose, including, but not limited to, copies for use and review by counsel, copies to provide to expert witnesses, court filings, pleadings, expert reports, or deposition or trial exhibits, the Bates number and the applicable confidentiality designation must be replicated on each page of the paper copies.

## V. METADATA

25. The parties agree that only the following metadata fields need be produced, to the extent they exist: document type; custodian; author/from; recipient/to, cc and bcc; title/subject; file name and size; date and time created, sent, and/or received; and hash value. Although it is presumed generally that the above list of metadata fields will be provided, the list of metadata fields is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor and business practices. Metadata shall be produced as DAT files or other mutually agreeable format.

26. All metadata files shall indicate the beginning unique Bates Number and final unique Bates Number of each document. For any documents that have attachments and/or affixed notes, the beginning unique Bates Number and final unique Bates Number of such attachments and/or affixed notes shall be included in the entry for that document in the metadata file.

## VI. DOCUMENTS PROTECTED FROM DISCOVERY

27. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

28. The parties need not place on their privilege logs any communications between a party and counsel (and their support staffs) that has appeared on behalf of that party in this litigation, or any privileged materials that were created in connection with this litigation after the filing of the Complaint on September 13, 2016. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## VII. SOURCE CODE/SOFTWARE MATERIALS

29. This Stipulation does not govern the format for production of source code/software material, which shall be produced pursuant to the relevant portions of the Protective Order.

## VIII. MODIFICATION

30. This Stipulated Order may be modified by stipulation of the parties or by the Court for good cause shown.

31. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: February 15, 2017

Respectfully Submitted,

COOLEY LLP

/s/ *Erik B. Milch*

Erik B. Milch
Lam K. Nguyen

Attorneys for Plaintiff and Counterclaim-Defendant QUANERGY SYSTEMS, INC.

Dated: February 15, 2017

Respectfully Submitted,

LATHAM & WATKINS LLP

/s/ *Ann Marie Wahls*

Douglas E. Lumish
Ann Marie T. Wahls
Priyen Patel
Brett Sandford

Attorneys for Defendant and Counterclaim Plaintiff VELODYNE LIDAR, INC.

# ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated:  February 15, 2017

/s/ *Erik B. Milch*
Erik B. Milch

**[PROPOSED] ORDER**

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: February 16, 2017

_____
UNITED STATES DISTRICT JUDGE

GRANTED
Judge Nathanael M. Cousins
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA